Entered on Docket September 30, 2015

**Below is a Memorandum Decision of the Court.**



_____
**Paul B. Snyder**
**U.S. Bankruptcy Court Judge**
**(Dated as of Entered on Docket date above)**

_____

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re: <br><br> HYUN J. UM and JIN S. UM, <br><br> Debtors. | **Case No. 10-46731** |
| In re: <br><br> THOMAS W. PRICE and PATRICIA A. PRICE, <br><br> Debtors. | **Case No. 10-46732** |
| SPOKANE ROCK I, LLC, <br><br> Plaintiff, <br><br> v. <br><br> HYUN J. UM and JIN S. UM, husband and wife, and THOMAS W. PRICE and PATRICIA A. PRICE, husband and wife, <br><br> Defendants. | **Adversary No. 14-04311** <br><br> **MEMORANDUM DECISION GRANTING PARTIAL SUMMARY JUDGMENT** <br><br> **NOT FOR PUBLICATION** |

This matter came before the Court for hearing on June 25, 2015, on the Motion for Summary Judgment filed by Spokane Rock 1, LLC (SR 1), against Hyun and Jin Um (Um) and Thomas and Patricia Price (Price) (collectively "Debtors"), on SR 1's Amended Complaint

MEMORANDUM DECISION GRANTING
PARTIAL SUMMARY JUDGMENT - 1

objecting to the discharge of the Debtors. At the hearing, the Court requested additional briefing by the parties and took the matter under advisement. Based on the pleadings and arguments presented, the decision of the Court is as follows.

The procedural and substantive history of this case is arduous and encompasses over one thousand separate pleadings. Relevant for purposes of this ruling, on September 24, 2013, the Court granted motions to appoint a chapter 11 trustee (Trustee) filed by the Unsecured Creditors Committee and James Rigby, Trustee for the Bankruptcy Estate of Michael R. Mastro. The First Amended Disclosure Statement (Disclosure Statement) was approved by the Court on November 6, 2014, and the Modified Trustee's First Amended Plan of Reorganization (Plan) was confirmed by the Court on January 20, 2015. The appointed Trustee became the Plan Administrator pursuant to Article 5 of the Plan. The Plan Administrator filed his First Chapter 11 Post-Confirmation Report (Report) on July 17, 2015.

SR 1 objects to each of the Debtors' discharge under 11 U.S.C. § 727(a)(2), (a)(3), (a)(4), and (a)(6)[1]. Section 1141(d)(3) provides that the confirmation of a plan does not discharge a debtor if:

> (A) the plan provides for the liquidation of all or substantially all of the property of the estate;
>
> (B) the debtor does not engage in business after consummation of the plan; and
>
> (C) the debtor would be denied a discharge under section 727(a) of this title if the case were a case under chapter 7 of this title.

The three subparts of § 1141(d)(3) are conjunctive so that an individual chapter 11 debtor will only be denied a discharge if, in addition to the existence of grounds for denial of discharge under § 727(a), the confirmed plan is a liquidating plan and the debtor does not engage in

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM DECISION GRANTING
PARTIAL SUMMARY JUDGMENT - 2

**Below is a Memorandum Decision of the Court.**

business after the plan has been consummated. Spaich v. Smith (In re Spaich), BAP No. EC-05-1071-SBMa, 2005 WL 6960232, at *2 (9th Cir. BAP Dec. 9, 2005).

**I.      Section 1141(d)(3)(A) - Liquidation of All or Substantially All of Estate Property**

The definition of "liquidate" includes to "determine the liabilities and distribute the assets of (an entity), esp. in bankruptcy or dissolution," "convert (a nonliquid asset) into cash," and "wind up the affairs of (a corporation, business, etc.)." Black's Law Dictionary (10th ed. 2014). While the Bankruptcy Code does not define "liquidation plan," courts have found such a plan to involve "the cessation of debtor's operations, the sale of debtor's assets and the distribution of the proceeds among creditors." In re Repurchase Corp., 332 B.R. 336, 341 (Bankr. N.D. Ill. 2005).

> Liquidation under a Chapter 11 plan is not the same as a Chapter 7 liquidation. A liquidation under Chapter 11 allows the debtor in possession, one who is presumably more familiar with the assets of the debtor's organization and its respective values, the ability to plan for an orderly divestiture of the assets over time as opposed to a Chapter 7 trustee, who is generally less familiar with the debtor's assets. . . . A liquidating plan is desirable when the debtor in possession can bring about a greater recovery for the creditors than would a straight liquidation under Chapter 7.

In re Deer Park, Inc., 136 B.R. 815, 818 (9th Cir. BAP 1992), aff'd, 10 F.3d 1478 (9th Cir. 1993). A plan that vests all property back into the debtors' names upon confirmation, provides an ongoing payment plan, and is filed to regenerate a business is not a liquidation plan. See Derusha v. Duncan (In re Duncan), Ch. 11 Case Nos. 2:11-bk-16577-JMM, 2:11-bk-18633-JMM, Adv. No. 2:12-ap-00068-JMM, 2012 WL 5462917, at *4 (Bankr. D. Ariz. Nov. 6, 2012). Courts look to a debtor's plan and disclosure statement to determine whether a plan liquidates all or substantially all of the estate property. See, e.g., Suarez v. Suarez (In re Suarez), Ch 11 Case No. 91-20276, Adv. No. 92-2009, 2007 WL 7024926, at *2 (Bankr. S.D. Ga. Feb. 8, 2007).[2]

---

[2] While the Westlaw case disposition date is 2007, the LEXIS disposition date is 1992. 1992 Bankr. LEXIS 2584 (Bankr. S.D. Ga. Oct. 2, 1992).

MEMORANDUM DECISION GRANTING
PARTIAL SUMMARY JUDGMENT - 3

**Below is a Memorandum Decision of the Court.**

The assets of the Debtors' estates are set forth in the Disclosure Statement. Jointly owned assets consist of Prium Companies, LLC (Prium Companies); Queen High Full House, LLC (QHFH); PPM Payments Services, LLC (PPM); SoundBuilt attorney fees; and potential litigation and avoidance claims against William Stegeman and the Um children. The separate personal property of the Debtors is set forth in exhibits to the Disclosure Statement.

The Court finds that the following explicit language of both the Disclosure Statement and Plan supports SR 1's arguments that the Plan provides for a liquidation of all or substantially all of the estate property. Relevant portions of the Disclosure Statement include the following:

### V. B. Means of Implementation

The concept behind the Plan is a simple one: it provides for the liquidation of all of the Debtors' nonexempt assets by a Plan Administrator with powers analogous to a bankruptcy trustee, and payment to creditors holding Allowed Claims from the proceeds of the liquidation. . . .

On the Effective Date, title to all Estate Assets will vest in the Plan Administrator . . . .

The Plan Administrator shall be solely responsible for (i) the winding up of the Debtors' Estates; (ii) liquidating or otherwise reducing the Estate's Assets to Cash; (iii) filing, prosecuting and settling Causes of Action and Avoidance Actions; (iv) making distributions to Holders of Allowed Claims; and (v) settling, resolving and objecting to Claims.

### V.C. Liquidation of Assets

The Trustee anticipates the bulk of the Non-Exempt Assets (other than the Prium Receivable[)] will be liquidated within three months of the Effective Date.

### VIII. Projected Disposable Income Analysis

The Debtors are no longer receiving any income or salary from any properties or entities that are property of the estate. The Debtors will no longer be residing in the residences owned by QHFH.

### IX. Liquidation Analysis

While this Plan is a liquidation plan, the Trustee believes that the return to unsecured creditor [sic] would be greater under this Plan than in chapter 7 liquidation.

MEMORANDUM DECISION GRANTING
PARTIAL SUMMARY JUDGMENT - 4

### XI.C. <u>Feasibility</u>

> This element is not relevant here as the Plan contemplates liquidation of all of the Debtors' non-exempt assets.

Disc. Stmt., Ch. 11 Case No. 10-46731, ECF No. 897-1. Relevant portions of the Plan include the following:

### 5.1 The Plan Administrator

> As of the Effective Date, title to all Estate Assets shall vest in the Plan Administrator and he shall have exclusive management authority and control over all Estate Assets. . . .
>
> The Plan Administrator shall be solely responsible for (i) the winding up of the Debtors' Estates; (ii) liquidating or otherwise reducing the Estate's Assets to Cash; (iii) filing, prosecuting and settling Causes of Action and Avoidance Actions; (iv) making distributions to Holders of Allowed Claims; and (v) settling, resolving and objecting to Claims.

### 5.5 Payment of Allowed Deficiency Claims and Closing the Estate

> As soon as practicable . . . the Plan Administrator shall take all necessary steps to distribute the remaining Estate Assets and close the case.

### 8.1 Time of Payment on Claims

> As soon as reasonably practicable following the Effective Date, the Plan Administrator shall make payments from the net proceeds from the sale or liquidation of Estate Assets . . . .

Plan, Ch. 11 Case No. 10-46731, ECF No. 999-1.

The Court also finds that the Plan Administrator's actions taken since confirmation have been consistent with the Plan's liquidation directive. The Report provides an update on the disposition of estate assets, indicating which assets have been liquidated and which remain to be liquidated. The Report further provides that there are no known impediments to consummation of the Plan.

Despite the explicit language in the Plan and Disclosure Statement, and the actions taken by the Plan Administrator consistent with this language, the Debtors argue that the Plan is not a liquidating plan because it does not liquidate the Debtors' membership interests in PPM, Prium Companies, and QHFH. This argument, however, disregards the fact that the

MEMORANDUM DECISION GRANTING
PARTIAL SUMMARY JUDGMENT - 5

Plan Administrator is in the process of winding up the affairs of these entities, and these membership interests have, or will have, no value once the entities' assets are liquidated. The Report indicates the same with regard to PPM. While the Report states that this entity is providing property management services to certain subsidiaries of Prium Companies, and generating income for the estate, it also states that "[t]he properties it is managing are being liquidated as part of the Prium Companies, LLC, chapter 11 proceeding and its contracts will terminate upon liquidation. The membership interests have no value beyond the income that is presently being generated from the existing management contracts." Report 3, Ch. 11 Case No. 10-46731, ECF No. 1076. The Disclosure Statement also indicates that "[t]he effect of the Prium Companies, LLC bankruptcy effectively makes PPM unsaleable and worthless on a going forward basis." Disc. Stmt. 16, ECF No. 897-1.

The Report also recognizes that the Plan Administrator as Management Representative of Debtor Prium Companies and its subsidiaries, continues to liquidate properties in which Prium Companies has a membership interest. This is substantiated by the Management Representative's Status Report filed on September 18, 2015, in that case. Status Report, Ch. 11 Case No. 14-44512, ECF No. 313. Further, just as the Debtors' membership interest in PPM has "no value," the Disclosure Statement states that the "Debtors' membership interest in Prium is worthless because the amount of unsecured debt at the Prium Companies, LLC level exceeds, by a significant amount, the aggregate positive equity in all of its subsidiaries." Disc. Stmt. 13, ECF No. 897-1.

Finally, as to QHFH, the Report sets forth those assets that the Plan Administrator, who controls 100% of the equity interest of QHFH, has liquidated or is in the process of liquidating. Pursuant to the Disclosure Statement, "[t]he Trustee anticipates that he will have liquidated all the real property owned by QHFH and its subsidiaries by or shortly following the Effective Date." Disc. Stmt. 23, ECF No. 897-1. There is no evidence suggesting that the Plan Administrator will be unable to successfully liquidate QHFH's assets. There is no evidence to

MEMORANDUM DECISION GRANTING
PARTIAL SUMMARY JUDGMENT - 6

indicate that once this entity's assets are liquidated and disbursed, the Debtors' membership interest in QHFH will have value.

The Court is not persuaded by the Debtors' argument that the Plan Administrator is not liquidating the Debtors' personal property. The Report specifies that the Plan Administrator is "evaluating the best method of liquidating these assets." Report 3, ECF No. 1076. Contrary to the Debtors' argument, there is nothing in the record or evidence to indicate that the Plan Administrator is not liquidating, or does not intend to liquidate, the Debtors' personal property. Because the Debtors may be given the option to purchase these assets is not inconsistent with the Plan Administrator's charge to liquidate them. Also, it is not dispositive that liquidation has not yet occurred, as a chapter 11 liquidation contemplates an orderly divestiture of assets over time. Particularly in this case, where the asset liquidation is complex, timing is not the most critical factor when compared to maximizing the distributions to creditors.

The Debtors contend that the Plan Administrator is actually conducting a supervised divestiture of estate assets, which is not the same as liquidating estate property as contemplated by § 1141(d)(3)(A). Specifically, they argue that the Plan Administrator, with their assistance, is engaging in a supervised divestiture of the membership interests in PPM, Prium Companies and QHFH. The cases on which the Debtors' rely, however, are distinguishable. See In re Enron Corp, Ch. 11 Case No. 01-16034 (AJG), 2004 WL 6075307 (Bankr. S.D. N.Y. July 15, 2004); In re River Capital Corp., 155 B.R. 382 (Bankr. E.D. Va. 1991); In re T-H New Orleans P'ship, 188 B.R. 799 (E.D. La. 1995), aff'd, 116 F.3d 790 (5th Cir. 1997); In re First Am. Health Care of Ga., Inc., 220 B.R. 720 (Bankr. S.D. Ga. 1998).

First, pursuant to the Disclosure Statement and Plan, the Debtors do not retain any of the estate assets other than those exempted by them. "The property of the debtors' bankruptcy estate other than the Um Exempt Assets and the Price[] Exempt Assets shall remain property of such Debtors' bankruptcy estate and shall be subject to the control of the Plan Administrator after the Confirmation Date." Plan Sec. 5.2., ECF No. 999-1. In the cited

MEMORANDUM DECISION GRANTING
PARTIAL SUMMARY JUDGMENT - 7

cases, the reorganized debtors retained at least a portion of nonexempt estate property to continue their prepetition business.

Second, the Disclosure Statement and Plan mandate liquidation of the estate property. There are no other options provided. Conversely, in the cited cases, the plans of reorganization provided options other than liquidation, such as refinancing or merger and uninterrupted continuation of the business. "Where a plan of reorganization provides viable options other than to liquidate and distribute property of the estate, it is not a liquidating plan for purposes of section 1141." First Am. Health Care of Ga., 220 B.R. at 726.

Furthermore, dissimilar to the cited cases, the Debtors are not involved in managing the estate or disposing of estate assets, particularly the three limited liability corporations (LLC). Rather, as of the effective date of the Plan, the Plan Administrator assumed "exclusive management authority and control over all Estate Assets," and is "solely responsible" for winding up the Debtors' estate and liquidating the estate assets. Plan Sec. 5.1, ECF No. 999-1. Mr. Um's declared employment by Radiance Capital Financial, LLC is of no bearing, as this company formerly owned by Prium Companies, was sold to an unrelated party. Additionally, as of January 1, 2015, Mr. Price is only temporarily employed by PPM on a part-time basis to assist the Plan Administrator with tenant issues and leasing matters. Orse Decl. 3, Ch 11 Case No. 10-46731, ECF No. 1051. His employment should end as soon as the properties under the Plan Administrator's management are liquidated. In summary, the Debtors have no discernable role in managing the Debtors' estates, as they had prior to the Trustee appointment.

Finally, the Debtors argue the Plan is a supervised divestiture of assets because the winding down of the estates is complicated, requires the continued operation of business, and will take time in order to maximize the creditor distribution. This, however, is the very nature of a complex chapter 11 liquidation. "The purpose of a liquidating plan in Chapter 11 is to allow the debtor to liquidate his property in a reasonable manner without a forced sale and to effect

MEMORANDUM DECISION GRANTING
PARTIAL SUMMARY JUDGMENT - 8

substantial cost savings." River Capital, 155 B.R. at 388 (quoting In re Quality Sign Co., 51 B.R. 351, 352 (Bankr. S.D. Ind. 1985). The length of time necessary to liquidate the assets, for the most part, was caused by the Debtors themselves in structuring a substantial number of interrelated and partially-interrelated LLCs holding mostly real estate, and often borrowing and distributing profits between LLCs in a convoluted manner. Moreover, there are other differences between this case and the cases relied upon by the Debtors. Unlike the cited cases, the Plan Administrator has sole authority to manage the estates, the Debtors are not continuing their prepetition business (see infra Part II), the Debtors retain no interest in the estate assets, and the Plan mandates liquidation. The Debtors' divestiture argument is not persuasive.

The Debtors' contention that their pledge of post-petition income negates a finding that theirs is a liquidation plan, is also a red herring. While the Plan contemplates payment of "all disposable earnings from personal services performed by the Debtors . . . or other future income," this is expected only to "the extent necessary for execution of the Plan and as required by 11 U.S.C. § 1123(a)(8)." Plan 20-21, ECF No. 999-1. The Disclosure Statement unequivocally recognizes the *conditional* nature of this obligation, as follows:

> The provisions of the Bankruptcy Code that would require the Debtors' [sic] to devote their post-petition earnings to payment of their creditors **would not be triggered unless each of the Debtors had monthly disposable income exceeding $16,666.67 per month above** the amounts reasonably necessary for their housing, food, transportation, medical, insurance, clothing, and other ordinary and usual living expenses. **The monthly disposable income of the Debtors, to the Trustee's knowledge, does not exceed this amount.**

Disc. Stmt. 27-28, ECF No. 897-1 (emphasis added). There is nothing in the record to indicate that the Plan Administrator has received post-petition earnings from the Debtors or expects to fund the Plan from such earnings. The Debtors have provided *no* evidence that their monthly disposable income has exceeded or is expected to exceed $16,666.67 per month above their ordinary living expenses, thereby triggering the contribution requirement. Nor have the Debtors provided any evidence that they have contributed, are able to contribute, or expect to

MEMORANDUM DECISION GRANTING
PARTIAL SUMMARY JUDGMENT - 9

contribute post-petition earnings to the estate. The monitoring of such a loosely written provision is not practicable. Thus, while the Plan and Disclosure Statement conditionally require the Debtors to devote post-petition earnings to the Plan, this requirement appears meaningless and hollow based on the facts of this case. Accordingly, the Court finds that the Debtors' Plan provides for the liquidation of all or substantially all of the property of the estate, thereby satisfying § 1141(d)(3)(A).

**II.     Section 1141(d)(3)(B) – Debtor Does Not Engage in Business after Consummation of the Plan**

The Code does not elaborate on the requirement that the debtor "not engage in business after consummation of the plan." § 1141(d)(3)(B). The issue is whether this provision refers to employment by an individual debtor after plan consummation, or instead to continuation of the prepetition business. The legislative history indicates that it is the latter approach that was intended in § 1141(d)(3)(B):

> Paragraph (3) specifies that the debtor is not discharged by the confirmation of a plan if the plan is a liquidating plan and if the debtor would be denied discharge in a liquidation case under section 727. Specifically, if all or substantially all of the distribution under the plan is of all or substantially all of the property of the estate or the proceeds of it, **if the business, if any, of the debtor does not continue,** and if the debtor would be denied a discharge under section 727 (such as if the debtor were not an individual or if he had committed an act that would lead to a denial of discharge), then the chapter 11 discharge is not granted.

H.R. Rep. No. 95-595, at 418-19 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6374-75 (emphasis added).

The Court has considered the cases cited by the parties and recognizes that courts have not been consistent. It is apparent, however, that the outcome of these decisions depended on the nature of both the debtor and the confirmed plan. The Court finds most helpful those cases involving individual chapter 11 debtors with liquidating plans. See Grausz v. Sampson (In re Grausz), 63 Fed. App'x 647, 650 (4th Cir. 2003); In re Owens, 207 B.R. 520, 526 n.1 (Bankr. E.D. Ky. 1996); Suarez, 2007 WL 7024926, at *2.

In Grausz, the debtor was employed post consummation as a consultant for an unrelated business. The Fourth Circuit Court of Appeals, which is the only known circuit court to address the issue before this Court, recognized the impossibility of continuing to operate a business that is liquidated by a confirmed plan:

> Indeed, the Joint Plan of Liquidation clearly did not permit the continuation of any of Dr. Grausz's pre-petition businesses, instead it provided for liquidation of those businesses. It seems clear to us that § 1143(a)(3)(B) [sic] does not refer to basic employment by an individual debtor but to the *continuation* of *a pre-petition* business, and, therefore, Dr. Grausz's argument fails.

Grausz, 63 Fed. App'x. at 650. In Owens, the debtor's plan was primarily a liquidation plan. The bankruptcy court made the distinction between the debtor continuing to operate a prepetition business and being employed by it, finding the latter was "not engag[ing] in business" as utilized in § 1141(d)(3)(B). Owens, 207 B.R. at 526 n.1. Finally, in Suarez, the bankruptcy court applied a contrary approach and determined that even though the debtor's business was liquidated through the confirmed plan, the debtor, who was a licensed medical doctor, was "engage[d] in business after consummation" because he planned to continue in his medical practice in a different locale. Suarez, 2007 WL 7024926, at *3.

Also useful are those cases involving corporate debtors with liquidating plans. See In re Mahoney Hawkes, LLP, 289 B.R. 285 (Bankr. D. Mass. 2002); In re S. Canaan Cellular Invs., Inc., 427 B.R. 44 (Bankr. E.D. Pa. 2010). In both of these cases, the bankruptcy courts determined that the debtors could not engage in their prepetition businesses, as these were liquidated, or to be liquidated, under their confirmed plans. Mahoney Hawkes, 289 B.R. at 303; S. Canaan Cellular, 427 B.R. at 84. Significantly, the court in S. Canaan Cellular noted that upon the liquidation of the debtors' partnership interests, "the debtors would not be engaging in their prepetition business, which was to act as general and limited partners of SCCC, LP," a specific entity. S. Canaan Cellular, 427 B.R. at 84.

It is undisputed that the Debtors' business prior to filing bankruptcy was owning and managing a number of Washington State LLCs, which in turn owned or invested in other real

MEMORANDUM DECISION GRANTING
PARTIAL SUMMARY JUDGMENT - 11

estate related projects. In accordance with the Plan, these LLCs are all now being liquidated through the sale of their properties and the winding up of their affairs by the Plan Administrator, who has exclusive management authority and control. The Debtors no longer manage these LLCs and their properties as they did prior to bankruptcy, the appointment of the Trustee, and consummation of the Plan.

Based on the legislative history and the cases most factually analogous to this case, the Court is persuaded that § 1141(d)(3)(B) refers to the *continuation* of a debtor's prepetition business in the requirement that "the debtor does not engage in business after consummation of the plan." The Court finds particularly compelling the sole circuit case, Grausz, that has addressed this issue. Additionally, other than Suarez, those cases that decided contrary to Grausz are factually distinguishable, as indicated above, or did so in dicta. See In re Flintkote Co., 486 B.R. 99, 132 (Bankr. D. Del. 2012) (bankruptcy court addressed the issue in the context of a § 524(g) determination). The Debtors no longer engage in their prepetition business, which was to manage specific LLCs and their properties. See S. Canaan Cellular, 427 B.R. at 84 (prepetition business being liquidated entailed acting as general and limited partners of a *specific* entity). This is not altered by the temporary part-time employment of Mr. Price by the Plan Administrator or the employment of Mr. Um by an unrelated party. See Owens, 207 B.R. at 526 n.1. Additionally, the Debtors concede that one spouse's employment satisfies, or not, the "engage in business" test. The Court finds that neither Mr. Price nor Mr. Um is engaged in business after consummation of the Plan, as meant within § 1141(d)(3)(B), and further finds that there is no evidence that Ms. Price and Ms. Um are engaged in such business. Accordingly, SR 1 has established the second requirement under § 1143(d)(3).

**III.     Section 1141(d)(3)(C) – Debtor Would Be Denied a Discharge under § 727(a)**

SR 1's Amended Complaint alleges four denial of discharge claims against each of the Debtors: § 727(a)(2), (a)(3), (a)(4) and (a)(6). At the June 25, 2015 hearing, the Court confirmed with the Debtors' legal counsel that for each of these claims, Messrs. Um and Price

MEMORANDUM DECISION GRANTING
PARTIAL SUMMARY JUDGMENT - 12

did not dispute application of collateral estoppel with respect to the June 21, 2013 order and April 15, 2014 judgment entered in King County Superior Court Case No. 12-2-01179-6, and violation of this Court's temporary restraining order entered on April 7, 2011 (TRO), in Adversary Proceeding No. 11-04135. Messrs. Um and Price additionally did not dispute the factual allegations supporting each of these claims. Accordingly, SR 1 has established that it is entitled to summary judgment against Mr. Um and Mr. Price on its claims for denial of discharge under § 727(a)(2), (a)(3), (a)(4) and (a)(6).

Mr. Price additionally did not dispute the factual allegations concerning the failure to disclose the 8.8 carat diamond ring and undervaluing the wine collection, which support SR 1's claims for denial of discharge under § 727(a)(2) and (a)(4). SR 1 has established it is entitled to summary judgment under § 727(a)(2) and (a)(4) against Mr. Price on these additional grounds.

Mr. Um also did not dispute the factual allegations regarding his failure to list SR 1 as a creditor on his bankruptcy schedules, which supports SR 1's claim for denial of discharge under § 727(a)(4). SR 1 has established this additional factual basis for summary judgment against Mr. Um under § 727(a)(4).

With respect to Ms. Price, SR 1 conceded in its reply to summary judgment (Reply) filed on June 22, 2015, that it did not have a § 727(a)(3) claim against her. Ms. Price additionally contends that SR 1 is not entitled to summary judgment on its § 727(a)(6) claim that the Debtors refused to obey this Court's TRO prohibiting the destruction of evidence. She contends that SR 1 has made no factual allegations against her specifically to support this claim. She also argues that her testimony given in her examination under Rule 2004, submitted as evidence by SR 1, indicates that she was not involved with the business or business entities of either her husband or Mr. Um, and she had no knowledge of their business operations. Ms. Price has raised an issue of material fact as to the § 727(a)(6) claim.

MEMORANDUM DECISION GRANTING
PARTIAL SUMMARY JUDGMENT - 13

Accordingly, SR 1 has not established that it is entitled to summary judgment against Ms. Price on its claims for denial of discharge under § 727(a)(3) and (a)(6).

Ms. Price, however, did *not* dispute through declaration or otherwise the factual allegations or the legal arguments concerning her failure to disclose the 8.8 carat diamond ring and her undervaluing the wine collection, which support a denial of discharge under § 727(a)(2) and (a)(4). Accordingly, SR 1 has established it is entitled to summary judgment as a matter of law against Ms. Price for denial of discharge under § 727(a)(2) and (a)(4).

Ms. Um disputes SR 1's claims against her under § 727(a)(2), (a)(3), and (a)(6). Like Ms. Price, Ms. Um argues that SR 1 has made no factual allegations specifically against her to support these claims, which are based on acts committed during the operation and management of her husband and Mr. Price's business. Furthermore, Ms. Um filed a declaration and points to her testimony in her examination under Rule 2004, submitted by SR 1, to support her position that she was not involved in her husband's business or with any of his business entities in any manner. SR 1 did not refute this evidence in its Reply. At a minimum, Ms. Um has raised an issue of material fact, and SR 1 has not established it is entitled to summary judgment as a matter of law on these three claims.

Ms. Um further disputes SR 1's claim against her under § 727(a)(4). In support of this claim for denial of discharge, SR 1 alleges that Ms. Um failed to list SR 1 as a creditor on her bankruptcy schedules or fully disclose her travels in her examination under Rule 2004. Specifically, Ms. Um failed to disclose the purchase of plane tickets to LaGuardia, New York in February 2010, and Fort Lauderdale, Florida in July 2009. Ms. Um did, however, disclose that she traveled to Korea in January 2012 on plane tickets paid for by her sister. Ms. Um contends that the alleged false oaths were not knowing, fraudulent, or material.

Under § 727(a)(4)(A), the court shall grant a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account." A plaintiff must show by the preponderance of the evidence that "(1) the debtor made a false oath

MEMORANDUM DECISION GRANTING
PARTIAL SUMMARY JUDGMENT - 14

**Below is a Memorandum Decision of the Court.**

in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." Retz v. Samson (In re Retz), 606 F.3d 1189, 1197 (9th Cir. 2010) (quoting Roberts v. Erhard (In re Roberts), 331 B.R. 876, 882 (9th Cir. BAP 2005)).

A party objecting to a debtor's discharge on false oath grounds must establish "that the information was omitted for the specific purpose of perpetrating a fraud and not simply because the debtor was careless or failed to fully understand his attorney's instructions." Dubrowsky v. Estate of Perlbinder (In re Dubrowsky), 244 B.R. 560, 571-72 (E.D. N.Y. 2000). Intent may be inferred from the actions of the debtor. Garcia v. Coombs (In re Coombs), 193 B.R. 557, 564 (Bankr. S.D. Cal. 1996). "[O]nce it reasonably appears that the oath is false, the burden falls upon the [debtor] to come forward with evidence that he has not committed the offense charged." Boroff v. Tully (In re Tully), 818 F.2d 106, 110 (1st Cir. 1987) (quoting In re Mascolo, 505 F.2d 274, 276 (1st Cir. 1974)).

"A fact is material 'if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.'" Retz, 606 F.3d at 1198 (quoting Khalil v. Developers Sur. & Indem. Co. (In re Kahlil), 379 B.R. 163, 173 (9th Cir. BAP 2007)). "An omission or misstatement that 'detrimentally affects administration of the estate' is material." Retz, 606 F.3d at 1198 (quoting Fogal Legware of Switzerland, Inc. v. Wills (In re Wills), 243 B.R. 58, 63 (9th Cir. BAP 1999)).

> In determining whether an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors. Even if the debtor can show that the assets were of little value or that a full and truthful answer would not have directly increased the estate assets, a discharge may be denied if the omission adversely affects the trustee's or creditors' ability to discover other assets or to fully investigate the debtor's pre-bankruptcy dealing and financial condition.

6 Collier on Bankruptcy ¶ 727.04[1][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

In addition to stating that she was not involved in her husband's business, Ms. Um in her declaration stated that she was not aware that SR 1 was a creditor and failure to list them

MEMORANDUM DECISION GRANTING
PARTIAL SUMMARY JUDGMENT - 15

**Below is a Memorandum Decision of the Court.**

was an honest mistake. Further, English is not her native language, thus Ms. Um relied on her husband to prepare their schedules. SR 1 has provided no evidence to the contrary. Ms. Um's declaration and testimony raise an issue of material fact as to whether her omission of SR 1 from the schedules was knowing and fraudulent.

Regarding Ms. Um's travel, in her declaration and testimony, Ms. Um stated that she did not recall purchasing tickets for her domestic travels for the years in question, as the plane tickets were purchased nearly three years prior to her examination. Furthermore, Ms. Um contends that the omission of these two domestic plane trips is not material and SR 1 has submitted no evidence establishing how these omissions detrimentally affected administration of the estate. The Court finds that Ms. Um has raised an issue of material fact as to whether the omission of her travels was knowing, fraudulent, and material. SR 1 has not established that it is entitled to summary judgment on its § 727(a)(4) claim against Mr. Um.

Accordingly, SR 1 has established the final element of § 1141(d)(3) as to Mr. Um, Mr. Price, and Ms. Price, and is entitled to summary judgment on its claim for denial of discharge in accordance with § 1141(d)(3) and § 727(a). Since issues of material fact remain on SR 1's claims for denial of discharge against Ms. Um under § 1141(d)(3)(C), SR 1 is not entitled to summary judgment against Ms. Um under § 1141(d)(3)(C) or § 727(a).

///End of Memorandum Decision///

MEMORANDUM DECISION GRANTING
PARTIAL SUMMARY JUDGMENT - 16